ESTATE OF ODEGARD: ODEGARD and others, Appellants, v. FIRST NATIONAL BANK OF MADISON and others, Respondents.

*October 5—October 31, 1961.*

For the appellants Ralph Odegard, Elizabeth Odegard Larson, and Holtan Odegard there was a brief by *Stroud, Stebbins & Stroud* of Madison, and oral argument by *R. M. Stroud* and *Donald R. Stroud.*

For the appellant *John H. Esch,* guardian *ad litem,* there was a brief by *Ela, Christianson, Ela, Esch, Hart & Clark,* attorneys, and *William F. Nelson* of counsel, all of Madison, and oral argument by *John H. Esch.*

For the respondents there was a brief by *La Follette, Sinykin, Doyle & Anderson,* attorneys, and *Gordon Sinykin* and *Dudley H. Davis, Jr.,* of counsel, all of Madison, for Eloise Odegard and Marcella Mazer; and by *Harry V. Hill* of Madison, for Carl Torkelson; and oral argument by *Mr. Davis* and *Mr. Hill.*

FAIRCHILD, J. 1. *Question as to priority between certain expenses and income benefits.* Section 2 of Article Ninth provides as follows:

"To pay out of the income of the trust estate, if possible, but if necessary out of principal, all taxes, assessments, insurance, incumbrances, costs, commissions, or other charges legally or properly chargeable against the trust estate, including all costs and expenses incident to the maintenance, management, administration, protection, and distribution of the trust estate, and its defense against legal or equitable attack by any person, both before and after the administration of the estate in the probate court or courts."

The introductory portion of section 3 provides as follows:

"To apply the income from the trust estate (which as used in this section 3 shall be construed to mean current, and any accumulations of, income) for the use and benefit of the persons, and upon the terms and conditions, as follows: [The income benefits to the wife, children, sisters, and nieces are then described]."

Up to and including 1959, the trustee charged the bulk of the expenses listed in section 2 against income and a smaller portion against principal. The record does not disclose the theory upon which this division was made. In 1959 after deducting $3,450.73 of expenses from income, the net income exceeded the $20,000 annual income benefit specified for the widow. The county court concluded that expense charges listed in section 2 are to be paid out of principal except to the extent they can be paid out of income after all income benefits have been paid.

The parties agree that the correctness of the county court's conclusion depends upon the words "out of the income . . . if possible, but if necessary out of principal." As long as there is any income it would be *possible* to pay an equal amount of expense charges out of income. The sisters and nieces urge, in effect, that "if possible" means "if possible after payment of income benefits," thus adding a qualification which is not expressed. It is true that section 3, on the other hand, commands application of "the income" and does not say "the remaining income," "the net income," or words of similar import.

The provision for payment of charges "out of the income . . . if possible" in section 2 precedes the direction "to apply the income" in section 3. Payment of expense charges out of income before payment of income benefits would not have left the widow and children in necessitous circumstances because a provision of section 3 authorized invasion of the corpus to provide comfort and support of the

widow and children if the income from the estate were insufficient for such comfort and support. A portion of section 3 provides that if, after making full payments of annual income benefits to the widow, children, sisters, and nieces, there shall remain unused income for such year then the income benefits to the sisters and nieces shall be increased up to a maximum of $6,000. It seems unlikely that the testator intended that income benefits to the sisters and nieces should be increased by $6,000 because there was "unused income" if such increase would necessitate paying expenses out of principal. Respondents argue that it is unlikely that testator expected the income in any year to be less than the charges listed in section 2 and that in order to make the language meaningful, it must be construed to deal with the more-likely situation where income was insufficient to pay all income benefits together with all expense charges. On the other hand, the main purpose of section 2 seems to have been to express a preference that expenses of the type listed should be taken out of income rather than out of principal even though a number of the listed types of expense would, in the absence of a specific direction, have been taken out of principal rather than income. The question is close. Largely because the provisions in section 2 precede the provisions in section 3, because the literal meaning of section 2, unless qualified by implication, requires the payment out of income to the extent that there is income, and because we find no such clear implication, we conclude that the expenses listed in section 2 are to be charged against income before the amount of income available for income benefits is determined.

As mentioned, the trustee had in past years divided the charges between principal and income. Because all reports and accounts up to January 1, 1960, had been approved and allowed, the county court ordered that its interpretation of section 2 be effective as of January 1, 1960. Although we

reach the opposite conclusion as to the proper construction of section 2, the parties do not contend that there should be any adjustment of the manner in which the charges were allocated prior to 1960 and we do not consider that such adjustment is necessary.

2. *Constructions affirmed.* Although the appeal is from the whole of the judgment, no argument has been made concerning a number of portions of the judgment, and as to them it will be affirmed.

3. *Priority of widow's income benefits over intermediate payments to children.* Section 3 providing for income benefits clearly required that there be full payment in each year to the widow before there could be any payment of income benefits to the children, and that there be full payment of income benefits to the children before there could be any payment of income benefits to the sisters and nieces. Section 4 unconditionally directed payment of $25,000 to each child upon attaining age twenty-five and $50,000 upon attaining age thirty. No words in section 4 suggest that payment is conditioned upon the sufficiency of the income to provide the full annual income benefit to the widow. It is obvious, however, that payment to the children of the intermediate payments would reduce the income from the trust estate. It seems to have been conceded at all times that the intermediate payments totaling $225,000 should not presently be made in view of the fact that the available income prior to 1959 was never enough to provide the full annual income benefit for the widow. In the light of the general plan of the distribution of trust benefits, it might be argued that the testator intended that the intermediate payments be postponed if making them would jeopardize the income benefits payable to the widow. Whether or not we would so decide if the point were contested, we do not find it necessary to disturb the proposition evidently accepted by the children and the guardian *ad litem* that these

payments were properly postponed under the circumstances. Apparently no concession was made that the right to the intermediate payments completely lapsed, and we can find no reason for interpreting the will to that effect.

We conclude that to the extent that at any time it can be determined that retention of any part of the intermediate payments is no longer needed to produce income benefits for the widow, such part of the intermediate payments may be disbursed to the children in the manner provided by section 4.

4. *Disposition of income in excess of amount required to pay section 2 expenses and income benefits to the widow.* All testator's children have attained age thirty-five and none is any longer entitled to income benefits. The county court concluded that as a result any income in excess of that payable as income benefit to the widow is to be applied on income benefits to the sisters and nieces. This conclusion leaves out of account the fact that such excess income results from the retention of the intermediate payments in the trust fund. Such retention can be justified only on the theory that payment of full income benefits to the widow is paramount to the disbursement of the intermediate payments to the children. We can see no justice or logic in paying the income derived from such retention to the sisters and nieces. Certainly there is no language in the will which requires that result. To the extent that income in excess of the section 2 expenses and the annual income benefit to the widow can be said to have been produced by the amount of the intermediate payments remaining in the trust estate, such excess income should be disbursed to the children.

5. *Effect of section 5.* Article Ninth provides four ways in which principal was to be distributed to the testator's children or their issue. Section 4 provides for the intermediate payments. Section 5 provides for a determination of the amount of principal necessary to provide the annual

income benefits for beneficiaries other than the children and the remainder was channeled via sections 5, 6, and 7 to the children or their issue. This computation was to be made when Ralph attained age thirty-five. Section 8 provides for determination of the amount necessary to provide current annual income benefits of a deceased beneficiary other than one of the children, and for distribution of such amount to the children or issue. Section 13 provides for distribution to the issue of the children upon termination of the trust. Under the circumstances in 1948, there were insufficient assets to make any distribution under section 5. The purpose of section 5 was to effect a distribution to the children of principal not needed to pay income benefits without waiting for the death of an income beneficiary or the ultimate termination of the trust. There was no such excess at the time fixed by the testator and we see no reason for the operation of section 5 at any later time even if the value of the assets should increase. The channels for distribution to the children or their issue under sections 4, 8, and 13, of course, remain in effect.

6. *Intermediate payments under section 4 not dependent on section 5.* Before Ralph attained age thirty-five a total of $75,000 had become payable to him under section 4. Elizabeth had attained age twenty-five in 1946 and Holtan in 1948. Twenty-five thousand dollars were payable to each of them under section 4. Thus $125,000 would have been paid out of principal before Ralph reached age thirty-five had the trust estate been big enough to fit the will. Elizabeth and Holtan would each be entitled to receive $50,000 under section 4 three and five years later. Yet section 5, which required a determination of the value of the estate, the amount of principal required to pay income benefits to others, and division of the remainder, made no reference to the $100,000 which would later become payable to Elizabeth and Holtan under section 4. As has been said,

there is no conditional language with respect to any of the intermediate payments. We can only conclude that in making the computation under section 5, the trustee must necessarily have subtracted the amount of unpaid intermediate payments as well as the principal required to produce income benefits for the widow, sisters, and nieces from the total value of the estate before dividing the remainder into three equal shares.

7. *Operation of section 8.* Section 8 provides in part that in the event of the death of any of the income beneficiaries other than the children "my said trustee shall, in accordance with the principle set forth in section 5 of this Article Ninth, determine what portion of the principal of the trust estate is necessary to produce the current annual income payable to [the deceased beneficiary] had she continued to live, and shall thereupon withdraw from the trust estate the amount of principal thus determined" and pay it over or use it for the benefit of the children or issue as further provided.

The formula of section 5 requires the trustee to determine the amount of principal necessary to produce "the maximum current annual incomes payable under said paragraphs" whereas the language above quoted from section 8 refers to "the current annual income payable." The county court decreed that,

"Current annual income as used in said section 8 means the amount of income payable to the legatees named in said section 8, based upon the trust income available for distribution in the year death occurs. The current annual income for such year payable to said legatees may be the maximum provided for in the will or it may be less."

Because of the difference between the terms "maximum current annual incomes payable" used in section 5, and "current annual income payable" in section 8, and because section 5 dealt with the computation of the amount which

should be retained in the trust, whereas section 8 dealt with a computation of an amount which should be separated from the trust so that a more-conservative formula in the latter would be natural, we agree with the construction reached by the county court.

It follows from this construction that when the two nieces died in 1938 and 1945, since their current annual income benefit from the trust was then zero there was no occasion for any withdrawal from the principal. The question remains whether, in the event of the death of the widow, the amount to be withdrawn will be computed upon the basis of (1) $20,000 per year, (2) the amount which she may receive in that year, if it is less than $20,000, or (3) the amount which she would have received had the intermediate payments been separated from the trust fund. Although it might be considered that the use of basis (3) would be more equitable to the sisters and living nieces, we conclude that such result would be beyond the bounds of interpretation of the written instrument and that the term "current annual income payable" to the widow at her death should be construed to mean the amount actually available to be paid to her in that year, whether $20,000 or less.

In addition to the distribution after the widow's death of the amount of principal then computed under section 8, any part of the intermediate payments not previously paid will then be distributed according to section 4.

*By the Court.*—The paragraphs of the judgment numbered 2, 3, 4, 5, 6, and 7, the first two sentences of paragraph 9 and the portions of the judgment dealing with the trustee's accounts, fiscal-year record keeping, and calendar-year reporting and accounting are affirmed. In all other respects the judgment is reversed, and the cause remanded with directions to enter judgment not inconsistent with the opinion on file herein.